1
2
3
4
5
6
7
8
9
10
11
12
13

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GARY W. WALTERS, *et al.*,

     *Plaintiffs*,

vs.

STATE OF NEVADA, *et al.*,

     *Defendants*.

Case No. 2:13-cv-01435-JAD-GWF

**O R D E R**

14    This civil rights action brought by two Nevada state inmates as co-plaintiffs comes

15  before the Court on plaintiffs' applications (Docs. 8 & 10) to proceed *in forma pauperis*,[1]

16  plaintiffs' motions (Docs. 2 & 3) for a temporary restraining order and a preliminary injunction,

17  plaintiff Gary Walters' motion (Doc. 4) to raise his prison copy credit limit, and plaintiff Curtis

18  Downing's motion (Doc. 9) for an extension of time, as well as for initial review under 28

19  U.S.C. § 1915A.  The applications to proceed *in forma pauperis* will be granted, subject to the

20  remaining provisions herein.  The Court thus proceeds to initial review.

21                                           ***Screening***

22    When a "prisoner seeks redress from a governmental entity or officer or employee of

23  a governmental entity," the court must "identify cognizable claims or dismiss the complaint,

24  or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a

25  claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who

26  is immune from such relief." 28 U.S.C. § 1915A(b).

27  _____

28        [1]The Court held in a prior order that the Prison Litigation Reform Act required that each co-plaintiff
satisfy the requirements of the Act regarding payment of the filing fee and pauper status.  See Doc. 7.

1    In considering whether the plaintiff has stated a claim upon which relief can be granted,

2 all material factual allegations in the complaint are accepted as true for purposes of initial

3 review and are to be construed in the light most favorable to the plaintiff. *See, e.g., Russell*

4 *v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). However, mere legal conclusions

5 unsupported by any actual allegations of fact are not assumed to be true in reviewing the

6 complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 & 686-87 (2009). That is, bare and

7 conclusory assertions that constitute merely formulaic recitations of the elements of a cause

8 of action and that are devoid of further factual enhancement are not accepted as true and do

9 not state a claim for relief. *Id.*

10    Further, the factual allegations must state a plausible claim for relief, meaning that the

11 well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *[Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

> . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

22 *Iqbal*, 556 U.S. at 678.

23    Allegations of a pro se complainant are held to less stringent standards than formal

24 pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

25    In the complaint, co-plaintiffs Gary Walters and Curtis Downing present seven "causes

26 of action" followed thereafter by seven counts. Plaintiffs' claims, in the main, proceed from

27 the same underlying legal premises, repeated numerous times in overlapping fashion over the

28 course of the thirty-nine page pleading.

Plaintiffs maintain in the causes of action, *inter alia*, that: (a) the commission established by the state legislature in the mid 1950s to oversee preparation of the Nevada Revised Statutes was unconstitutional under the state constitution because it included members of the state supreme court and thus allegedly violated a separation of powers requirement of the state constitution; (b) the legislature thereafter failed to lawfully adopt the Nevada Revised Statutes in 1957 because, *inter alia*, the revised statutes were adopted and published without an enacting clause as required by the state constitution and without the required readings, votes and journal entries; (c) the statutory revision commission transferred its functions to an another allegedly unconstitutional entity in 1963; (d) plaintiffs thus are "'Minority' Disadvantaged Persons, i.e. Foreign Incarcerated Inmates unconstitutionally withheld in a Rogue State of Nevada . . . in the Nevada Department of Corrections (NDOC) . . . [subjected to] excessive/Cruel and Unusual Punishment Unlawful Confinement;"[2] (e) plaintiffs told Nevada Assemblyman William Horne of these alleged constitutional violations in September 2013 but he did not make his colleagues aware of these issues, allegedly requiring his removal from office under the state constitution; and (f) plaintiffs learned in February 2013 that Secretary of State Ross Miller has not maintained the official acts of the state legislature for 1957 and 1969, allegedly requiring his removal as well.

In the seven counts that follow the causes of action, plaintiffs allege that the foregoing circumstances violate their Fourth Amendment rights against illegal seizure, their Fourteenth Amendment rights to due process and equal protection, and numerous Nevada state constitutional provisions invoked via pendent jurisdiction.  They claim that these alleged violations have resulted in plaintiffs "being deprived of life; liberty; acquiring, possession and protecting property and pursuing and obtaining safety and happiness" and "being continued to be illegally seized unconstitutionally and unlawfully."[3]

/ / / /

---

[2]Doc. 1-1, at electronic docketing page 13.

[3]Doc. 1-1, at electronic docketing page 19, 21, 23, 26, 30, 31, 33 & 35.

1    Plaintiffs seek, *inter alia*, five trillion dollars in compensatory and punitive damages on

2 each of the seven counts, a "declaratory judgment declaring [their] convictions void ab initio,"

3 and a declaratory judgment further declaring all legislative acts of the Nevada legislature since

4 the mid 1950's void and unconstitutional under the state constitution.

5    Plaintiff names as defendants the State of Nevada and, in their individual and official

6 capacities, Secretary of State Miller, Assemblyman Horne, and hundreds of John and Jane

7 Does consisting of all former Nevada state legislators, governors, lieutenant governors,

8 secretaries of state, attorneys general, and commissioners going back to the 1950's.

9    Plaintiffs do not state a cognizable claim upon which relief may be granted under

10 federal law.

11    First, plaintiffs clearly lack standing to the extent that they seek to challenge – separate

12 and apart from a challenge to their criminal convictions – the validity of all Nevada state

13 statutes since the mid 1950's for violating the state constitution, the alleged failure of

14 Assemblyman Horne to seek the action in the legislature that they desire, and the alleged

15 failure of Secretary of State Miller to maintain copies of certain legislative acts.  A litigant who

16 raises only a generally available grievance, claiming only a harm to his and every citizen's

17 interest in proper application of the constitution and laws, does not state an Article III case or

18 controversy.  *See, e.g., Hollingsworth v. Perry*, 133 S.Ct. 2652, 2662 (2013).  A litigant

19 claiming that every Nevada state statute since the mid 1950's was adopted in violation of the

20 state constitution presents about as generalized of a grievance for purposes of standing

21 doctrine as one might imagine.  The same conclusion holds true regarding plaintiffs' claims

22 regarding the alleged failure of a state legislator to inform his colleagues of such alleged

23 violations and the alleged failure of a state secretary of state to maintain all of the state

24 statutory materials that he allegedly is required to maintain by the state constitution.

25    To the extent that plaintiffs *arguendo* have standing based upon an effort to establish

26 the alleged invalidity of their criminal convictions and incarceration, their claims then fall

27 squarely under the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  A plaintiff may not pursue

28 federal civil rights claims that necessarily call the validity of his conviction or sentence into

question unless and until the conviction and sentence first have been overturned or otherwise vacated on direct appeal, on post-conviction review, or by executive action.  It is clear from the face of the papers submitted that plaintiffs' convictions and sentences have not been overturned, as they seek to have their convictions and continued incarceration adjudicated and declared to be unconstitutional by this action.

In any event, even if plaintiffs *arguendo* had standing to raise claims herein that further *arguendo* were not *Heck*-barred, their claims clearly are frivolous on their face.  Plaintiffs allege that nearly six decades of Nevada state legislative enactments are wholly void across the board, rendering Nevada an alleged "rogue" state with no valid legislative action for nearly sixty years.  A number of Nevada state inmates recently have attempted to overturn their convictions *pro se* based upon substantially similar arguments.  The Supreme Court of Nevada repeatedly has rejected the core argument presented here regarding the alleged lack of enacting clauses in the Nevada Revised Statutes in numerous opinions, which were not published apparently due to the nonprecedential value of an opinion on such a patently meritless challenge.[4]  The Supreme Court of Nevada is the final arbiter of Nevada state law, including Nevada state constitutional law.  The state supreme court's rejection of plaintiffs' core argument regarding an alleged lack of enacting clauses is the final word on that subject, and a federal court may not reach a different conclusion on the Nevada state law issue undergirding plaintiffs' federal claims.  Nothing in the strained logic presented by plaintiffs leads to a different outcome with regard to their remaining related arguments.

The Court therefore will dismiss all federal claims presented alternatively for lack of standing, for their noncognizability in a federal civil rights action, and as frivolous.[5]  The Court

---

[4]*See, e.g., Hull v. State*, 2013 WL 5730596 (Nev. Oct. 16, 2013); *Betts v. State*, 2013 WL 3270769 (Nev. June 12, 2013); *Depiano v. Palmer*, 2013 WL 3305482 (Nev. May 13, 2013); *Burgess v. State*, 2012 WL 5835122 (Nev. Nov. 15, 2012); *Valenzuela v. State*, 2011 WL 4345453 (Nev. Sept. 15, 2011); *Gutierrez-Piceno v. State*, 2748446 (July 13, 2011); *Lyons v. State*, 2011 WL 1044591 (March 17, 2011).  The Court has cited only the most recent handful of such cases available via a legal research service.

[5]The Court's dismissal on the bases discussed in the text does not signify that the claims presented are  free of other substantial deficiencies. *Inter alia*, plaintiffs  may not proceed against the State in federal

(continued...)

-5-

1   finds that delaying dismissal for an opportunity for amendment would be futile as to all federal

2   claims.

3       Following upon the dismissal of all federal claims over which the district court had

4   original jurisdiction, the Court finds that the interests of judicial economy, convenience,

5   fairness and comity would be best served in this case by dismissing the state law claims that

6   remain without prejudice.  Over and above the fact that the state law claims are frivolous on

7   their face, a dismissal of the federal action will not materially impact the analysis of any

8   limitations issues applicable to the pendent claims if brought in a state court action.  The core

9   circumstances upon which plaintiffs rely occurred nearly six decades ago.  To any extent that

10  plaintiffs would present viable state law claims against defendants Horne and Miller based

11  upon the collateral incidents alleged in 2013, the limitations period would not yet have expired

12  as to such claims.  The Court accordingly exercises its discretion pursuant to 28 U.S.C. §

13  1367(c)(3) to decline to exercise supplemental jurisdiction over the state law claims.

14                              ***Pending Motions***

15      Given the dismissal of all claims for the reasons assigned above, plaintiffs clearly

16  cannot establish a basis for either a temporary restraining order or preliminary injunctive relief

17  in this action.

18      Plaintiff Walter's motion to raise his copy credit limit at the prison will be denied as moot

19  following upon the dismissal of this action.   Moreover, co-plaintiff Downing's pauper

20  application clearly reflects that Downing has ample funds available with which to make copies

21  to the extent that copies are necessary to access the courts to seek review of the dismissal.

22  Further, plaintiff Walters attaches no responses to a legal-copy-credit request at the prison

23  _____

24          [5](...continued)
    court due to the state sovereign immunity recognized by the Eleventh Amendment.  Plaintiffs  may not seek
25  damages from the individual officer defendants in their official capacities also because of state sovereign
    immunity and further because such a defendant is not a "person" subject to suit under 42 U.S.C. § 1983 in
26  that capacity for monetary damages.  Any claims that accrued decades ago of course would be time-barred
    under the two-year statute of limitations applicable to civil rights actions arising out of Nevada.  Further, at the
27  very least the state legislators would be subject to legislative immunity for their alleged acts and omissions in
    the legislative process.  The Court has not tarried over such collateral deficiencies because the entire action
28  is subject to dismissal on other grounds.

rejecting such a request on the basis that he has exceeded his $100.00 legal copy credit limit. Finally, the Court finds that the credit increase amount requested – $1,300.00 – far exceeds the amount that ever reasonably would be required for this litigation, even if it were not being dismissed.  When the Court approves requests of this nature, the approval typically is for an increase of $10.00 or perhaps $20.00.  Plaintiff Downing, again, has ample funds with which to make any necessary copies if the co-plaintiffs seek review of this dismissal, and it also has not been established that Downing further does not have copy credit remaining.  Plaintiff Walters thus has no need to increase his legal copy credit limit for this case.

The Court will grant plaintiff Downing's extension request *nunc pro tunc*.

**IT THEREFORE IS ORDERED** that plaintiffs' applications (**Docs. 8 & 10**) to proceed *in forma pauperis* **are GRANTED**, subject to the remaining provisions herein.  Plaintiffs shall not be required to pay an initial partial filing fee.  However, even though the action is dismissed, plaintiffs each still must pay, separately, a full filing fee pursuant to 28 U.S.C. § 1915(b)(2), pursuant to the Court's prior order (Doc. 7).

**IT FURTHER IS ORDERED** that the movants herein are  permitted to maintain this action to a conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor.  This order granting *forma pauperis* status shall not extend to the issuance of subpoenas at government expense.

**IT FURTHER IS ORDERED** that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits in the account of plaintiff **GARY W. WALTERS, #1022269**,[6] (in the months that the account exceeds $10.00) until a full $350.00 filing fee has been paid.

**IT FURTHER IS ORDERED** that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District

---

[6]The Department is being directed to pay $350.00 from the account of plaintiff Walters and another $350.00 from the account of plaintiff Downing.  That is, *each* plaintiff is being required to pay a full $350.00 filing fee, separate and apart from the fee paid by the other co-plaintiff.

of Nevada, 20% of the preceding month's deposits in the account of plaintiff **CURTIS L. DOWNING, #18675,**[7] (in the months that the account exceeds $10.00) until a full $350.00 filing fee has been paid.  **The Clerk of Court shall SEND a copy of this order to the Finance Division of the Clerk's Office.  The Clerk shall also SEND a copy of this order to the attention of the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702.**

**IT FURTHER IS ORDERED** that the Clerk shall file the complaint and that the complaint and this action shall be DISMISSED for the reasons assigned herein.

**IT FURTHER IS ORDERED** that plaintiff Downing's motion (**Doc. 9**) for an enlargement of time **is GRANTED** *nunc pro tunc* in connection with the pauper application (Doc. 10) entered on December 3, 2013.

**IT FURTHER IS ORDERED** that all remaining motions (**Docs. 2, 3, and 4**) **are DENIED** for the reasons assigned herein.

**IT FURTHER IS ORDERED** that the dismissal of this action shall count as a "strike" for purposes of 28 U.S.C. § 1915(g) for *each* plaintiff herein, such that plaintiff Walters has accrued a § 1915(g) strike by the filing of this action and plaintiff Downing also has accrued a § 1915(g) strike by the filing of this action.

**IT FURTHER IS ORDERED** that, in the event of an appeal, and pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies to the Court of Appeals that an appeal is not taken in good faith.  Plaintiffs allege in this federal civil rights action that their convictions are invalid because, *inter alia*, the entire Nevada Revised Statutes adopted nearly six decades ago are invalid for lack of an enacting clause.  To the extent that plaintiffs *arguendo* have standing to raise such a generally available grievance regarding the validity of the entirety of the Nevada Revised Statutes, their federal claims clearly are *Heck*-barred because the claims necessarily question the validity of their convictions.  Their federal claims in any event are frivolous on

---

[7]See text at note 6 and note 6, *supra.*  Again, *both* plaintiff Downing *and* plaintiff Walters are required to pay a separate filing fee, such that *each* plaintiff separately must pay a full $350.00 filing fee.

their face, with cases presenting similar underlying contentions regarding unconstitutionality under the state constitution repeatedly having been rejected by the Supreme Court of Nevada, the final arbiter of Nevada state law.  The present action represents the epitome of the type of frivolous inmate litigation that numerous provisions of the Prison Litigation Reform Act seek to discourage.  So that this certification may be clearly marked for review by the Court of Appeals, the Clerk shall prominently include within the docket entry for this order a statement that the order also certifies to the Court of Appeals that an appeal would not be taken in good faith.

The Clerk of Court shall enter final judgment accordingly, dismissing this action without prejudice.

DATED: March 20, 2014.

_____
Jennifer A. Dorsey
United States District Judge

-9-